838

## FIRST NAT. BANK OF AMARILLO, TEX., v. CONTINENTAL CASUALTY CO.

### No. 7063.

Circuit Court of Appeals, Fifth Circuit.
June 30, 1934.

HUTCHESON, Circuit Judge, dissenting.

———✦———

Ben H. Stone, of Amarillo, Tex., for appellant.

Allen Wight, of Dallas, Tex., for appellee.

Before BRYAN, FOSTER, and HUTCHESON, Circuit Judges.

BRYAN, Circuit Judge.

This was an action by the First National Bank of Amarillo, Tex., on two "bankers' blanket bonds" of indemnity against the insurer or underwriter, the Continental Casualty Company, to recover $78,000, the aggregate amount of the bank's funds which had been embezzled by one of its employees. Both bonds were executed on February 7, 1931, and except as affected by riders covered only future losses of the bank resulting from dishonest acts of any of its employees. One, called the primary bond, covered such losses up to $50,000; the other, called the excess bond, covered only such losses in excess of $50,000. The bank, it may be assumed, would have been entitled to judgment for the full amount claimed if all its losses in controversy had been sustained after these bonds were issued. But the admitted fact is that $46,000 of its funds had been embezzled and lost to it before the date of the bonds in suit. The Casualty Company admitted liability for $50,-000, which it paid; and the district judge, before whom the case was tried without a jury, rejected the bank's contention that it was entitled to judgment for the balance of $28,000. Hence this appeal.

The bank did not discover that it had suffered any of the losses sued for until April, 1932. It canceled a similar primary bond for $50,000 which it had been carrying for years with another company when it took out fidelity insurance with the Casualty Company. A rider attached to the Casualty Company's primary bond recited that the prior bond of the other company had been canceled, and provided "that the attached bond shall be construed to cover, * * * any loss or losses under the prior bond which shall be discovered after the expiration of the time limited therein for the discovery of loss thereunder * * * which would have been recoverable under the prior bond had it continued in force." The rider attached to the excess bond similarly recited the cancellation of the prior bond, and provided "that the attached bond shall be construed to cover, subject to its terms, conditions and limitations, any loss or losses under the prior bond which shall be discovered after the expiration of the time limited therein for the discovery of loss thereunder, * * * provided that such loss or losses would have been recoverable under the prior bond had it not been canceled or terminated." The following notation appeared on this last-mentioned rider: "Excess Rider—Deductible Rider—for use where a Bankers' Blanket Bond is written * * * as excess over Standard Form No. 8," that is to say, the rider attached to the primary bond. The loss of $46,000 could not have been recovered by resort to the prior bond, since, although sustained while that bond remained in force, it was not discovered within twelve months after the cancellation or termination of that bond. But that loss was collectible out of the Casualty Company's primary bond under the terms of the rider thereto attached. The Casualty Company by paying the $46,000 and an additional $4,000 for losses subsequent to February 7, 1931, fully discharged the liability assumed by the primary bond, thus leaving $28,000 of losses which the bank seeks to recover by resorting to the Casualty Company's excess bond and the rider thereto attached.

As there can be no recovery under the excess bond itself, because it provides indemnity for future losses in excess of $50,000 and the loss here amounted to only $28,000, we turn to the rider thereto attached to determine whether liability may be asserted under it. In our opinion such liability may not be so asserted. That rider, like the bond to which it is attached and expressly made sub-

ject, is limited to losses in excess of $50,000. It has reference not at all to the primary bond but only to the prior bond. It does not, however, insure against all losses recoverable under the prior bond of $50,000, but only such as would have been recoverable according to its own terms, and which would also have been recoverable under the prior bond if it had been continued in force. The losses sought to be collected out of the excess bond could not have been recovered under the prior bond if it had not been canceled, because the prior bond was a primary and not an excess bond, and the losses under it were less than $50,000. The rider is upon a printed standard form and is comprehensive enough to refer to excess as well as to primary bonds; and so the object of attaching it to this excess bond could well have been to define and limit the liability assumed in cases of the cancellation of a prior excess bond, or of a prior primary bond under which the liability was greater than that assumed by the primary bond that superseded it. If, for example, the prior primary bond had been for $100,000 and the loss under it over $50,000, it may well be that liability would have existed under this excess bond. Without the quoted proviso, the rider might reasonably have been construed to mean that the excess bond provided indemnity for losses under the prior bond which amounted in the aggregate to less than $50,000; yet clearly that was not the intention of the parties. That proviso clearly puts such a construction out of the way. In this view the notation was proper; but in any event, it would not be controlling since it formed no part of the rider upon which it was placed. The primary bond became liable under the terms of its own rider for the loss of $46,000 sustained during the life of the prior bond. That bond and the prior canceled bond may not properly be treated as one and thereby make the excess bond liable for losses which it had not assumed. The excess bond assumed liability for losses above $50,000 incurred either before or after its effective date; but it did not contemplate or authorize the adding together or combining of losses incurred both before and after that date. To take future losses and add them to past losses and thus make up an amount sufficient to create a liability under the excess bond would be not to construe the contract by which the Casualty Company agreed to be bound, but to make one under which the bank could recover.

Our conclusion is that neither under the terms of the excess bond nor of the rider attached to it was there any liability on the part of the Casualty Company for the loss of the $28,000 sustained subsequent to the date of the bonds in suit.

The judgment is affirmed.

HUTCHESON, Circuit Judge (dissenting).

The case, and their reasons for the conclusions they reach, are so clearly stated by the majority that for my dissent only a statement of what I think our differences are will be necessary.

The majority opinion, for purposes of recovery on the excess bond, treats each bond as a separate contract, and each period covered by the base provisions and the riders on each bond as a distinct period. It holds that in order to recover under the excess bond the losses in the two periods covered by it may not be aggregated. It holds that there must be a loss in each period recovered for under it in excess of $50,000. It holds, too, that the superseded suretyship rider, by its terms superseding the United States Fidelity & Guaranty Company's primary bond, and also by its terms extending to losses recoverable under that bond, was made meaningless and ineffective as to the excess bond by the proviso in it that "the acts and defaults causing such loss or losses be such as are covered under the attached on its effective date." Construing this proviso as limiting the excess bond to losses under the prior bond in excess of $50,000, and the prior bond as limited to losses of $50,000 or less, it declares that the superseded suretyship rider on the excess bond is destroyed by its own contradictions.

On both grounds, then, that the loss in each of the periods covered by the excess bond was less than $50,000, and that the attempted coverage of the superseded suretyship rider failed through self contradiction, the majority deny recovery under the excess bond.

I find myself unable to agree with the majority in either of these conclusions. With deference, I submit that the construction adopted does not give effect to the principal apparent purpose of the parties, and that this is a case in which "that purpose should be given the greatest weight in determining the meaning of the words they use." Contracts, Restatements, § 236; Cocke v. Vacuum Oil Co. (C. C. A.) 63 F.(2d) 406. I think the principal apparent purpose of the parties, evidenced by the bonds sued on, was by the issuance of the two bonds, the primary for $50,000, the excess for the same amount, to insure the bank up to $100,000 against losses discovered before the expiration of one year from the termination of the superseding

bonds, both those occurring under these bonds and those occurring under the bond of the United States Fidelity & Guaranty Company they superseded. So thinking, I regard the sued on bonds as a single contract, made up of their base provisions and their riders, and not as a series of agreements, each separate from and independent of each other. So thinking, it seems clear to me that not to allow the bank to recover the $78,000 it lost in the contract period, $50,000 under the primary and $28,000 under the excess bond, is to permit the defendant to breach its contract without standing to the full consequences of the breach. Such a construction is to nullify the principal apparent purpose of the parties, to supersede the United States Fidelity & Guaranty bond with a coverage of $100,000, $50,000 primary and $50,000 excess.

I cannot any more agree with them on their second point, that the superseded suretyship rider attached to the excess suretyship bond is self-contradictory. I think it expresses plainly and simply an intention to have the excess bond extend to and cover losses under the United States Fidelity & Guaranty bond it superseded, just as the superseded suretyship rider on the primary bond made that bond extend to and cover them, and that the proviso to which the majority refer, referred not to the amounts lost, but to "acts or defaults causing the loss." So read, this rider and the base provisions of the excess bond taken together with the excess rider attached to the end of it, and the whole taken with the primary bond, make a contract under which the primary bond stands to the extent of $50,000 for losses incurred in the two periods, and the excess bond for all losses over $50,000 so occurring.

The argument that the superseded suretyship rider may have been attached to the excess bond under the mistaken idea that there was a prior excess bond will not stand up in face of the fact that the rider refers in terms to the bond it supersedes as a United States Fidelity & Guaranty Company bankers' blanket bond. It is quite clear that but for the excess rider attached to and a part of the excess bond, the bank would have had two primary bonds of $50,000 each, each covering the same losses. That the excess rider was attached to the excess bond had no effect on it other than to make the coverage of that bond for losses in the periods described in it, apply not to the first, but to the second, $50,000 of those losses.

I think the construction I contend for, that the attachment of the excess rider to

the bond was not for the purpose of requiring an excess of $50,000 to occur each period, but in the two periods covered as one, is a more reasonable construction than that the majority give it. This construction gives exact and full meaning to bonds written and tendered by the defendant as the result of earnest solicitation that it be allowed to take over the risk; the other construction makes one of the riders meaningless and prevents and destroys the effectiveness of the excess coverage. The construction the majority adopt in effect makes two provisions out of the one excess provision. It makes one applicable separately to the period of the superseded bond, the other applicable separately to the period of the superseding bond. It makes it necessary that in order to recover under each there should be losses in each period in excess of $50,000. I think that if the parties had intended any such result, they would, as they could easily have done, have drawn their contract that way. I think that since they drew their contract as they did, and since it can be given effect and meaning as drawn without throwing away or making meaningless any part of it, it ought to be construed that way.

I respectfully dissent.